## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**GRAPEVINE VISUAL CONCEPTS, INC.,**

**Plaintiff,**

- vs. -

C.A. NO.: _____

**RICK DRIGALLA and**
**GET BENT STRUCTURES (an unincorporated entity),**

**Jury trial demanded**

**Defendants.**

## CIVIL ACTION -  COMPLAINT

This action arises from defendant employee's deliberate misappropriation and/or destruction of vital proprietary business information belonging exclusively to his employer, the plaintiff, and defendant employee's intentional and malicious diversion of plaintiff's customers to a competitor of plaintiff in exchange for benefits from that competitor.  Plaintiff brings causes of action for breach of the duty of loyalty, tortious interference with contract and with prospective business relationships, breach of contract, conversion of equipment and violation of the Federal Computer Fraud and Abuse Act and Section 2(c) of the Federal Robinson-Patman Act.

## PARTIES

1.      Plaintiff Grapevine Visual Concepts, Inc. ("Grapevine") is engaged in the business designing and manufacturing displays and exhibits for trade shows, conventions, corporate interiors, showrooms retail environments and fixtures.  It is incorporated in the State of Pennsylvania, with its principal place of business at 153 James Way, Southampton, Pennsylvania.

2.      Defendant Rick Drigalla was Grapevine's Vice President for Sales and Marketing from August 4, 2010 through May 12, 2015.  He is a natural person and a citizen and resident of the State of Pennsylvania, residing at 576 Abbey Court, Blue Bell, Pennsylvania 19422.

3.      Defendant Get Bent Structures is an unincorporated entity, upon information and belief, operating in the State of New Jersey at an address of 1263 Glen Ave., Suite 210, Moorestown, New Jersey 08057.

4.      Upon information and belief Get Bent Structures is surreptitiously operated by Mr. Drigalla.

5.      Upon information and belief, Mr. Drigalla is associated with defendant Get Bent Structures, in direct competition with Grapevine.

## VENUE AND JURISDICTION

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves claims arising under federal law—specifically the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* and Section 2(c) of the Federal Robinson-Patman Act, 15 U.S.C. § 13.  The Court has supplemental jurisdiction over the state law claims of breach of contract and business torts.

7.      Venue is properly in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claim occurred in this District.

8.      This Court has *in personam* jurisdiction over defendant Drigalla because he is a resident of this District and conducts business in this District and it has jurisdiction over defendant Get Bent Structures because it conducts business in this District.

## FACTS

9.      Defendant Rick Drigalla was hired by plaintiff Grapevine as its Vice President for Sales and Marketing in or about August 2010.  Mr. Drigalla was employed by Grapevine until May 12, 2015.

10.      In his capacity as Vice President for Sales and Marketing, Mr. Drigalla was responsible for managing the accounts of Grapevine's customers.

11.      He also had access to a substantial amount of Grapevine's confidential and proprietary information pertaining to Grapevine's customers and their preferences and Grapevine's future project planning for those customers.

12.      Such information had been developed by Grapevine through significant expenditure of time and resources over a substantial period of time.  Moreover, Grapevine went to great lengths to protect the secrecy of such information and to keep it within the company.

13.      During the course of his employment at Grapevine, Mr. Drigalla was provided access to certain electronic devices belonging to Grapevine including an iPad2, serial no. DMRHK5H7DJHT; an iPhone, serial no. DNPK97F3F8H2, a Microsoft Surface Tablet, serial no. 22030734753 and a Verizon MiFi.

14.      In conjunction with his employment with Plaintiff Grapevine, Defendant Mr. Drigalla executed an Employment Agreement with Grapevine dated August 4, 2010.  The Employment Agreement contains a provision under which Mr. Drigalla agreed, for a period of one year following termination of employment, not to solicit any of Grapevine's existing or past customers without Grapevine's express written approval.  The Employment Agreement is attached hereto as **Exhibit A.**

15.     The Employment Agreement also contains a confidentiality provision and several other provisions under which Mr. Drigalla agreed, both during his period of employment and for a period of one year following termination of employment, not to divulge or disclose, directly or indirectly, certain categories of confidential and proprietary information including, but not limited to trade secrets, customer lists, processes, business affairs and future plans.

16.     Get Bent Structures has been a vendor from which Grapevine purchases materials to be used in its displays for its customers.

17.     Upon information and belief, Get Bent Structures is affiliated with a business entity called Quaker Chroma Imaging.

18.     Upon information and belief, Mr. Drigalla is affiliated with Get Bent Structures.

19.     During his employment at Grapevine, Mr. Drigalla utilized Grapevine's customer lists and other confidential and proprietary information for the benefit of himself and of Get Bent Structures, and possibly other entities with which he is affiliated.

20.     Mr. Drigalla has intentionally and maliciously interfered with Grapevine's business relationship and opportunities with its customer, Century 21 regarding projects involving interior store layouts, design, graphics and light boxes for the 9th floor buyers' floor reception and the lower Manhattan mezzanine Church Street display windows, as well as the Brooklyn main store.

21.     Specifically, in late April 29, 2015, Grapevine had come to an agreement with its customer Century 21 Stores under which Century 21 Stores was prepared to purchase over $50,000 worth of displays for its stores in Brooklyn and Manhattan. Grapevine personnel had visited the stores and were prepared to begin the work. As of April 29 and 30, 2015, Century 21 Stores representatives had signed quotes for the work. As of May 8, 2015, according to Century

21 Stores, the project was still ready to go with Grapevine.  On May 12, however, Century 21 Stores abruptly cancelled the work.  Upon information and belief, Mr. Drigalla diverted the Century 21 Stores project to himself and/or a business with whom he is associated including, but not limited to, Get Bent Structures and/or Quaker Chroma Imaging.

22.      Mr. Drigalla has intentionally and maliciously interfered with Grapevine's business relationship and opportunities with its customers Car Fax and Polaroid.

23.      Car Fax has been a customer of Grapevine since December 2014.

24.      Upon information and belief, Mr. Drigalla has communicated with one or more representatives of Car Fax for the purpose of soliciting business from Car Fax for the benefit of Get Bent Structures.

25.      Polaroid has been a customer of Grapevine for a number of years.

26.      Upon information and belief, Mr. Drigalla has communicated with one or more representatives of Polaroid for the purpose of soliciting business from Polaroid for the benefit of Get Bent Structures.

27.      During the course of his employment at Grapevine, Mr. Drigalla was provided access to certain electronic devices belonging to Grapevine including an iPad2, serial no. DMRHK5H7DJHT; an iPhone, serial no. DNPK97F3F8H2, a Microsoft Surface Tablet, serial no. 22030734753 and a Verizon MiFi.

28.      On or about April 23, 2015, personnel from Grapevine discovered that the aforementioned Microsoft Surface Tablet had been "wiped clean"—i.e., all files previously contained therein had been erased.

29.      The aforementioned Microsoft Surface Tablet had been "wiped clean" and files previously stored thereon had been removed by or at the direction of Mr. Drigalla.

30.     Mr. Drigalla has used or accessed files previously stored in the aforementioned Microsoft Surface Tablet for his own personal benefit.

31.     Mr. Drigalla has used or accessed files previously stored in the aforementioned iPad2, iPhone, and Verizon MiFi for his own personal benefit.

32.     The aforementioned actions on the part of Mr. Drigalla in relation to the aforementioned electronic devices were done by him for the purpose of defrauding Grapevine and obtaining confidential information and other intangible property of value belonging exclusively to Grapevine.

33.     Mr. Drigalla used trade secrets and other confidential and proprietary information belonging exclusively to Grapevine to divert existing customers and business opportunities as well as future business opportunities to Get Bent Structures and/or other business entities for his own benefit.  Although the role of Get Bent Structures was initially as a vendor only and limited to supplying materials for displays, the diversion of Grapevine's business opportunities represents an attempt on the part of Mr. Drigalla and/or Get Bent Structures to place Get Bent Structures in a position of fully entering the field where Grapevine operates, making it a direct competitor of Grapevine.  Upon information and belief, this expansion of Get Bent Structures' business is part of Mr. Drigalla's scheme to take Grapevine's confidential and proprietary customer information and to divert Grapevine's customers to set himself up as a direct competitor of Grapevine.  Much of his activity in this regard took place while he was employed by Grapevine.

34.     Mr. Drigalla has solicited other employees of Grapevine to leave their employment there or maligned present management for the purpose of alienating them so that they could be solicited for Mr. Drigalla's new competitive venture.

35.     Defendant Mr. Drigalla was terminated from employment at Plaintiff Grapevine on May 12, 2015.

36.     Upon information and belief the aforementioned activity on the part of Mr. Drigalla to expand Get Bent Structures' business, and possibly other yet-to-be determined third parties, for the benefit of himself and at the expense of Grapevine, using Grapevine's confidential and proprietary customer information still in his possession, continues post-employment and is planned by Mr. Drigalla to continue into the future.

## COUNT I

## INJUNCTIVE RELIEF

37.     Grapevine restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

38.     Mr. Drigalla has breached his legal obligations to Grapevine by failing to return the aforementioned electronic equipment and other assets belonging exclusively to Grapevine, by tortiously interfering with Grapevine's prospective business relations and by utilizing Grapevine's confidential and proprietary information in breach of the duty of loyalty and in violation of the Employment Agreement.

39.     Grapevine has suffered and will continue to suffer immediate and irreparable harm unless Mr. Drigalla is ordered to return said equipment and assets and enjoined from continuing to interfere with Grapevine's prospective business relations and by utilizing Grapevine's confidential and proprietary information.

40.     The injury to Grapevine includes irretrievable loss of business, and irretrievable loss of customer data.

41.      No adequate remedy at law exists to redress Grapevine's injuries, since monetary damages will neither compensate for the harm nor compel Mr. Drigalla comply with the terms of his Employment Agreement.

42.      Grapevine has clean hands and there is a substantial likelihood that it will succeed on the merits.

43.      The harm to Grapevine if injunctive relief is denied substantially outweighs the potential harm to Mr. Drigalla as a result of the injunction.

44.      The plaintiff seeks expedited injunctive relief in the form of a preliminary injunction and/or temporary restraining order.

## COUNT II

### BREACH OF CONTRACT — CONFIDENTIALITY/NON-USE

45.      Grapevine restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

46.      The Employment Agreement provides, in pertinent part:

> 10. CONFIDENTIALITY. RD [Rick Drigalla] recognizes that GVC [Grapevine] has and will have information regarding the following: inventions, products, product design, processes, technical matters, trade secrets, copyrights, customer lists, prices, costs, discounts, business affairs, future plans and other vital information items (collectively, "Information") which are valuable, special and unique assets of GVC. RD agrees that RD will not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate any Information to any third party without the prior written consent of GVC. RD will protect the Information and treat it as strictly confidential. A violation by RD of this paragraph shall be a material violation of this Agreement and will justify legal and/or equitable relief.

> 11. UNAUTHORIZED DISCLOSURE OF INFORMATION. If it appears that RD has disclosed (or has threatened to disclose) Information in violation of this Agreement, GVC shall be entitled to an injunction to restrain RD from disclosing, in whole or in part, such Information, or from providing any services to any party to whom such Information has been disclosed or may be disclosed. GVC shall not be prohibited by this provision from pursuing other remedies, including a claim for losses and damages.

12. CONFIDENTIALITY AFTER TERMINATION OF EMPLOYMENT. The confidentiality provisions of this Agreement shall remain in full force and effect for a one year period after the termination of RD's employment.

47.     Upon information and belief, during the course of his employment, Mr. Drigalla breached the above provisions of the Employment Agreement by divulging, disclosing, and/or communicating to a third party or third parties—including but not limited to Get Back Structures—Grapevine's inventions, products, product design, processes, technical matters, trade secrets, copyrights, customer lists, prices, costs, discounts, business affairs, future plans and other vital information items for purposes other than promoting Grapevine's business. Specifically Mr. Drigalla made such disclosure to benefit himself and/or third parties.

48.     Grapevine never provided written consent for such disclosure.

49.     Grapevine fulfilled its obligations under the Employment Agreement.

50.     Upon information and belief, since the termination of Mr. Drigalla's employment, he has continued to make such disclosures, in violation of the above provisions of the Employment Agreement.

51.     As a consequence of the foregoing, Grapevine has suffered and will continue to suffer irreparable harm and loss and damages in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT III

## BREACH OF DUTY OF LOYALTY

52.     Grapevine restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

53.     As an employee of Grapevine, Mr. Drigalla owed Grapevine a duty of loyalty during the course of his employment.

54.     Mr. Drigalla's duty of loyalty owed to Grapevine extends past the termination of his employment relationship with Grapevine.

55.     Mr. Drigalla breached his duty of loyalty during the course of his employment at Grapevine by diverting business opportunities away from his then employer, Grapevine, to other business entities and competitors

56.     As a consequence of the foregoing, Grapevine has suffered and will continue to suffer irreparable harm and loss and damages in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT IV

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

57.     Grapevine restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

58.     At all times material and relevant herein, Mr. Drigalla had knowledge that he was subject to the Employment Agreement and its provisions on non-solicitation and prohibition of disclosure or misappropriation of Grapevine's confidential and proprietary information.

59.     Notwithstanding, Mr. Drigalla tortiously interfered with both present and prospective contractual relationships between Grapevine and its customers and prospective customers.

60.     As a consequence of the foregoing, Grapevine has suffered and will continue to suffer irreparable harm and loss and damages in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT V

## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

61.     Grapevine restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

62.     There is a reasonable probability that Grapevine and prospective customers including, but not limited to Century 21 Stores, Polaroid and Car Fax, would have entered into future a contractual relationship with Grapevine.

63.     Mr. Drigalla is in the process of wrongfully and intentionally preventing future business relationships from developing between Grapevine and these and other customers.

64.     As a consequence of the foregoing, Grapevine has suffered and will continue to suffer irreparable harm and loss and damages in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT VI

### MISAPPROPRIATION OF PROPRIETARY, CONFIDENTIAL AND/OR TRADE SECRET INFORMATION

65.     Grapevine restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

66.     In the manner described above, Mr. Drigalla misappropriated Grapevine's confidential, proprietary and/or trade secret information, including its client list, and the client information contained therein, and other of Grapevine's proprietary client, trade secret and/or confidential information.

67.     In misappropriating Grapevine's confidential client list and other confidential propriety client, and/or trade secret information to unfairly compete with Grapevine's, Mr. Drigalla has unlawfully taken Grapevine's clients, caused clients not to renew, and caused Grapevine to lose substantial revenue.

68.     As a consequence of the foregoing, Grapevine has suffered and will continue to suffer irreparable harm and loss and damages in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT VII

### UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST

69.     Grapevine restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

70.     Mr. Drigalla has acted improperly and wrongfully and has used, and is continuing to use, Grapevine's tangible and intangible assets to set up a competing business.

71.     As a result of Mr. Drigalla's improper and wrongful conduct, and use of Grapevine's assets, Mr. Drigalla has received revenues from clients or customers that were rightfully Grapevine's and will continue to gain revenue from these unlawfully misappropriated clients or customers in the future.

72.     In order to prevent unjust enrichment to Mr. Drigalla based upon his improper use of Grapevine's assets, a constructive trust need properly be imposed on the revenues obtained, and to be obtained, by Mr. Drigalla from former Grapevine clients and customers.

73.     Upon information and reasonable belief, Mr. Drigalla is continuing his breaches of contract, tortious interference with present and prospective contractual and business relations, misappropriating client information and trade secrets, and engaging in unfair competition including, but not limited to, the solicitation of Grapevine's clients—all to promote Mr. Drigalla's impermissible competitive practices and thereby continue to reap the improper benefits gained as a result of his breach of fiduciary duties to Grapevine, and, unless enjoined, will continue to do so.

74.     As a consequence of the foregoing, Grapevine has suffered and will continue to suffer irreparable harm and loss and damages in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT VIII

### VIOLATION OF FEDERAL COMPUTER FRAUD AND ABUSE ACT
### (18 U.S.C. §§ 1030, et seq.)

75.     Grapevine restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

76.     During the course of his employment at Grapevine, Mr. Drigalla was provided access to certain electronic devices belonging to Grapevine including an iPad2, serial no. DMRHK5H7DJHT; an iPhone, serial no. DNPK97F3F8H2, a Microsoft Surface Tablet, serial no. 22030734753 and a Verizon MiFi.

77.     Each of the electronic devices in the previous paragraph constitutes a "protected computer" as defined by, and for the purpose of, the federal Computer Fraud and Abuse Act. Each of the aforementioned protected computers is used in or affects interstate or commerce or communication and contained certain vital company information and customer information that Mr. Drigalla has attempted to usurp.

78.     As stated above, on or about April 23, 2015, personnel from Grapevine discovered that the aforementioned Microsoft Surface Tablet had been "wiped clean"—i.e., all files previously contained therein had been erased.

79.     Upon information and belief the aforementioned Microsoft Surface Tablet had been "wiped clean" and files previously stored thereon had been removed by or at the direction of Mr. Drigalla.

80.     Upon information and belief, Mr. Drigalla has used or accessed files previously stored in the aforementioned Microsoft Surface Tablet for his own personal benefit.

81.     Upon information and belief, Mr. Drigalla has used or accessed files previously stored in the aforementioned iPad2, iPhone, and Verizon MiFi for his own personal benefit.

82.     Mr. Drigalla took information from the aforementioned protected computers, knowingly and intentionally accessed those computers without authorization or in excess of his authorized access and caused damage by impairing the integrity and/or availability of data and information contained thereon, and distributed such information to third parties.

83.     The aforementioned actions on the part of Mr. Drigalla in relation to the aforementioned electronic devices were done by him for the purpose of defrauding Grapevine and obtaining confidential information and other intangible property of value belonging exclusively to Grapevine.

84.     As a consequence of the foregoing, Grapevine has suffered and will continue to suffer irreparable harm and loss and damages in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT IX

### BREACH OF CONTRACT —
### BREACH OF CONTACT — SOLICITATION OF GRAPEVINE CLIENTS

85.     Grapevine restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

86.     The Employment Agreement states:

13. . . . RD [Rick Drigalla] recognizes that the various items of Information are special and unique assets of the company and need to be protected from improper disclosure.   In consideration of the disclosure of the Information to RD, RD agrees and covenants that for a period of one year following the termination of this Agreement, whether such termination is voluntary or involuntary, RD will not

directly or indirectly solicit to any existing or past customers of GVC [Grapevine] without the expressed written approval of GVC. This covenant shall also apply to any new potential customers for GVC within the geographical area that includes the area within a 250-mile radius of Huntingdon Valley, PA.

87.     Grapevine has not approved any deviations from this agreement, written or otherwise.

88.     Upon information and belief, since the termination of his employment on May 12, 2015, Mr. Drigalla has breached the aforesaid Employment Agreement by continuing to solicit Grapevine's customers.

89.     Grapevine fulfilled its obligations under the Employment Agreement.

90.     As a consequence of the foregoing, Grapevine has suffered and will continue to suffer irreparable harm and loss and damages in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT X

## UNFAIR COMPETITION

91.     Grapevine restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

92.     As a result of the conduct set forth above, Mr. Drigalla has engaged in unfair competition.

93.     As a consequence of the foregoing, Grapevine has suffered and will continue to suffer irreparable harm and loss and damages in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT XI

## CONVERSION

94.     Grapevine restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

95.     Grapevine is the exclusive owner of certain electronic devices presently in the possession of Mr. Drigalla: an iPad2, serial no. DMRHK5H7DJHT; an iPhone, serial no. DNPK97F3F8H2, a Microsoft Surface Tablet, serial no. 22030734753 and a Verizon MiFi.

96.     Mr. Drigalla was required to return such property upon the termination of his employment and has failed to do so.

97.     Grapevine is deprived of its interest in said property by Mr. Drigalla's unauthorized retention of said property.

98.     As a consequence of the foregoing, Grapevine has suffered and will continue to suffer irreparable harm and loss and damages in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this complaint.

## COUNT XII

### VIOLATION OF FEDERAL ROBINSON-PATMAN ACT
### (15 U.S.C. § 13)

99.     Grapevine restates and realleges the statements and allegations contained in the preceding paragraphs, as if fully set forth at length herein.

100.    Section 2(c) of the Robinson-Patman Act (15 U.S.C. § 13) provides, in relevant part:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, pay or grant, or to receive or accept, anything of value as a commission, brokerage or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, or any party to such transaction other than the person by whom such compensation is so granted or paid.

101.      Get Bent Structures engages in commerce for the purposes of Section 2(c).

102.      Get Bent Structures induced Mr. Drigalla to enter into one or more transactions with it by paying brokerage or commission fees to him.

103.      Specifically and by way of example, in or about April 2015 Grapevine was in a business relationship with a customer, and in order to complete a project for that customer, was required to purchase a large indoor display sign from a vendor, the approximate cost of which was $1900.

104.      Upon information and belief, on or about April 13, 2015, Mr. Drigalla diverted the purchase order to Get Bent Structures and, either on his own initiative or in cooperation with Get Bent Structures, charged to Grapevine's customer over $3400—a price well above market rate—to the benefit of Get Bent Structures.

105.      Upon information and belief, the difference between the quoted price and the price paid was provided by Get Bent Structures to Mr. Drigalla as a "kickback."

106.      Grapevine has been injured and may continue to be injured by this and other acts in violation of Section 2(c).

107.      By reason of the foregoing, Mr. Drigalla and Get Bent Structures have violated Section 2(c) of the Robinson-Patman Act and Grapevine is entitled to treble damages therefore, the costs of this litigation, attorneys' fees and pre-judgment interest pursuant to 15 U.S.C. § 15(a).

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff, Grapevine Visual Concepts, Inc. hereby respectfully prays for relief in requesting this Honorable Court enter judgment in its favor and against Mr. Drigalla as follows:

1.   Enjoining Mr. Drigalla from violating, breaching or interfering in any manner with the non-solicitation and confidentiality/non-use provisions of the Employment Agreement (**Exhibit A**);

2.   Enjoining Mr. Drigalla from divulging, disclosing, and/or communicating to a third party or third parties Grapevine's inventions, products, product design, processes, technical matters, trade secrets, copyrights, customer lists, prices, costs, discounts, business affairs, future plans and other vital information items for purposes other than promoting Grapevine's business;

3.   Enjoining Mr. Drigalla from soliciting, encouraging or attempting to induce, in any way, any customer of Grapevine to cancel, discontinue, terminate or decline to renew business with Grapevine;

4.   Enjoining Mr. Drigalla from directly or indirectly using, exploiting or in any way profiting from Grapevine's customer list and/or customer information and/or confidential and proprietary information;

5.   Enjoining Mr. Drigalla from soliciting or selling or promoting to Grapevine's customers or communicating with said clients, either verbally, orally, by telephone by social media, by internet-based communication forms, or by any type of writing, advertisement and/or circular or in any other manner whatsoever;

6.   Directing Mr. Drigalla to deliver and surrender to Grapevine the aforementioned equipment and assets and all its confidential and proprietary information in whatever form;

7.   Directing Mr. Drigalla to account for and imposing a constructive trust in favor of Grapevine on all revenues wrongfully derived by Mr. Drigalla as result of the aforementioned actions on his part;

8.    Awarding such injunctive relief in the form of a preliminary injunction and/or temporary restraining order;

9.    Awarding Grapevine Compensatory and punitive damages, attorney fees and costs as the law may allow; and

10.    Providing such other relief this Honorable Court may deed just and appropriate under the circumstances.

Respectfully submitted,

**NIXON PEABODY LLP**

By: _____
Craig R. Tractenberg (Pa. ID No. 34636)

437 Madison Avenue
New York, NY 10022
(212) 940-3722

Allen M. Mandelbaum (Pa. ID No. 464911)
1000 Germantown Pike, Suite D3
Plymouth Meeting, Pennsylvania 19462
(610) 279-8853

Attorneys for Plaintiff

Dated:  May 15, 2015

# EXHIBIT A

## *EMPLOYMENT AGREEMENT*

This Employment Agreement (this "Agreement") is made effective as of August 04, 2010, by and between Grapevine Visual Concepts, Inc ("GVC"), of 1810 County Line Road, Suite 414, Huntingdon Valley, Pennsylvania, 19006 and Rick Drigalla ("RD"), of 551 Deer Lake Circle, Blue Bell, Pennsylvania 19422.

    A. GVC is engaged in the business of selling, designing, servicing and consulting in the trade show exhibit and office interior industries. RD will primarily perform the job duties at the following location: 1810 County Line Road, Suire 414, Huntingdon Valley, Pennsylvania.

    B. GVC desires to have the services of RD.

    C. RD is willing to be employed by GVC.

Therefore, the parties agree as follows:

**1. EMPLOYMENT.** GVC shall employ RD as V.P. of Sales and Marketing. RD shall provide to GVC the following services: All duties required to market, sell, manage, hire, fire and train all sales and marketing department staff in order to fulfill sales objectives. RD accepts and agrees to such employment, and agrees to be subject to the general supervision, advice and direction of GVC and GVC's supervisory personnel. RD shall also perform (i) such other duties as are customarily performed by an employee in a similar position, and (ii) such other and unrelated services and duties as may be assigned to RD from time to time by GVC.

**2. BEST EFFORTS OF EMPLOYEE.** RD agrees to perform faithfully, industriously, and to the best of RD's ability, experience, and talents, all of the duties that may be required by the express and implicit terms of this Agreement, to the reasonable satisfaction of GVC. Such duties shall be provided at such place(s) as the needs, business, or opportunities of GVC may require from time to time.

**3. COMPENSATION OF EMPLOYEE.** As compensation for the services provided by RD under this Agreement, GVC will pay RD an annual salary of $65,000.00 payable on Friday of every other week. Upon termination of this Agreement, payments under this paragraph shall cease; provided, however, that RD shall be entitled to payments for periods or partial periods that occurred prior to the date of termination and for which RD has not yet been paid, and for any commission earned in accordance with GVC's customary procedures, if applicable. Accrued vacation will be paid in accordance with state law and GVC's customary procedures. This section of the Agreement is included only for accounting and payroll purposes and should not be construed as establishing a minimum or definite term of employment.

**4. COMMISSION PAYMENTS.** In addition to the payments under the preceding

paragraph, GVC will make commission payments to RD based on the attached Schedule A of this Agreement. This commission will be paid monthly on the 15th day of the following month.

    *A. Accounting.* GVC shall maintain records in sufficient detail for purposes of determining the amount of the commission. GVC shall provide to RD a written accounting that sets forth the manner in which the commission payment was calculated.

    *B. Right to Inspect.* RD, or RD's agent, shall have the right to inspect GVC's records for the limited purpose of verifying the calculation of the commission payments, subject to such restrictions as GVC may reasonably impose to protect the confidentiality of the records. Such inspections shall be made during reasonable business hours as may be set by GVC.

    *C. Death of the Employee.* If RD dies during the term of this Agreement, RD shall be entitled to payments or partial commission payments for the period ending with the date of RD's death.

**5. EQUITY OWNERSHIP.** GVC agrees to grant RD an equity percentage of stock in GVC if all sales goals are achieved as outlined in Schedule A of this agreement. If stock is granted, RD agrees that the stock can not be resold to any other person other then GVC unless expressly agreed in writing by GVC. Upon termination of RD for any reason, RD must sell back all outstanding shares to GVC at a price that was established at the preceding annual period ending December 31st prior to the termination.

**6. EXPENSE REIMBURSEMENT.** GVC will reimburse RD for "out-of-pocket" expenses incurred by RD in accordance with GVC's policies in effect from time to time.

**7. AUTO ALLOWANCE.** GVC will either reimburse RD for an auto allowance in the amount of $400.00 per month paid monthly on the first of the month, or supply RD with a company car which ever GVC deems suitable.

**8. HOUSING ALLOWANCE.** GVC recognizes that due to past credit issues, RD can not obtain a house rental in RD's name. GVC will therefore lease a home in the name of GVC for RD and RD agrees to reimburse GVC for any and all costs of the rental and will abide by all terms and condition of the Rental Lease Agreement that is made separately from this agreement.

**9. RECOMMENDATIONS FOR IMPROVING OPERATIONS.** RD shall provide GVC with all information, suggestions, and recommendations regarding GVC's business, of which RD has knowledge, that will be of benefit to GVC.

**10. CONFIDENTIALITY.** RD recognizes that GVC has and will have information regarding the following:
    - inventions

- products
- product design
- processes
- technical matters
- trade secrets
- copyrights
- customer lists
- prices
- costs
- discounts
- business affairs
- future plans

and other vital information items (collectively, "Information") which are valuable, special and unique assets of GVC. RD agrees that RD will not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate any Information to any third party without the prior written consent of GVC. RD will protect the Information and treat it as strictly confidential. A violation by RD of this paragraph shall be a material violation of this Agreement and will justify legal and/or equitable relief.

**11. UNAUTHORIZED DISCLOSURE OF INFORMATION.** If it appears that RD has disclosed (or has threatened to disclose) Information in violation of this Agreement, GVC shall be entitled to an injunction to restrain RD from disclosing, in whole or in part, such Information, and from providing any services to any party to whom such Information has been disclosed or may be disclosed. GVC shall not be prohibited by this provision from pursuing other remedies, including a claim for losses and damages.

**12. CONFIDENTIALITY AFTER TERMINATION OF EMPLOYMENT.** The confidentiality provisions of this Agreement shall remain in full force and effect for a one year period after the termination of RD's employment.

**13. NON-COMPETE AGREEMENT.** RD recognizes that the various items of Information are special and unique assets of the company and need to be protected from improper disclosure. In consideration of the disclosure of the Information to RD, RD agrees and covenants that for a period of one year following the termination of this Agreement, whether such termination is voluntary or involuntary, RD will not directly or indirectly solicit to any existing or past customers of GVC without the expressed written approval from GVC. This covenant shall also apply to any new potential customers for GVC within the geographical area that includes the area within a 250-mile radius of Huntingdon Valley, PA.

**14. EMPLOYEE'S INABILITY TO CONTRACT FOR EMPLOYER.** RD shall not have the right to make any contracts or commitments for or on behalf of GVC without first obtaining the express written consent of GVC.

**15. BENEFITS.** RD shall be entitled to employment benefits, including holidays, sick leave, vacation, health insurance, and pension plan as provided by GVC's policies in

effect from time to time.

**16. TERM/TERMINATION.** RD's employment under this Agreement shall be for an unspecified term with a guarantee of employment given by GVC if all sales goals are achieved as outlined on Schedule A of this agreement and as modified from time to time, and RD is in compliance with all of GVC's personnel policies. This Agreement may be terminated by GVC upon no written notice if the above is not in compliance, and by RD upon 30 days written notice. If RD is in violation of this Agreement, GVC may terminate employment without notice and with compensation to RD only to the date of such termination. The compensation paid under this Agreement shall be RD's exclusive remedy.

**17. TERMINATION FOR DISABILITY.** GVC shall have the option to terminate this Agreement, if RD becomes permanently disabled and is no longer able to perform the essential functions of the position with reasonable accommodation. GVC shall exercise this option by giving 14 days written notice to RD.

**18. COMPLIANCE WITH EMPLOYER'S RULES.** RD agrees to comply with all of the rules and regulations of GVC.

**19. RETURN OF PROPERTY.** Upon termination of this Agreement, RD shall deliver to GVC all property which is GVC's property or related to GVC's business (including keys, records, notes, data, memoranda, models, and equipment) that is in RD's possession or under RD's control. Such obligation shall be governed by any separate confidentiality or proprietary rights agreement signed by RD.

**20. NOTICES.** All notices required or permitted under this Agreement shall be in writing and shall be deemed delivered when delivered in person or on the third day after being deposited in the United States mail, postage paid, addressed as follows:

    Employer:

    Grapevine Visual Concepts, Inc
    Eileen Lapenta
    President
    1810 County Line Road, Suite 414
    Huntingdon Valley, Pennsylvania 19006

    Employee:

    Rick Drigalla
    551 Deer Lake Circle
    Blue Bell, PA  19422

Such addresses may be changed from time to time by either party by providing written

notice in the manner set forth above.

**21. ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.

**22. AMENDMENT.** This Agreement may be modified or amended, if the amendment is made in writing and is signed by both parties.

**23. SEVERABILITY.** If any provisions of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid or enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**24. WAIVER OF CONTRACTUAL RIGHT.** The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

**25. APPLICABLE LAW.** This Agreement shall be governed by the laws of the State of Pennsylvania.


**EMPLOYER:**
Grapevine Visual Concepts, Inc

By: _____     Date: __8 - 4 - 2010__
Eileen Lapenta
President



**AGREED TO AND ACCEPTED.**

**EMPLOYEE:**


_____     Date: __Aug. 4, 2010__
Rick Drigalla

**SCHEDULE A**

(Attachment to Employment Agreement dated August,1, 2010

**A. COMMISSION STRUCTURE.** Commission will be paid on all sales as per the following schedule so long as all normal profit margins have been adhered to or expressly waived by GVC:

1. 10% commission paid on all sales personally sold by RD and not involving any other sales people.
2. 2% commission paid on all sales of sales team excluding personal sales.
3. No commission paid on sales of house accounts or sales by the CEO of GVC unless expressly agreed upon by GVC.

**B. SALES GOALS AND EQUITY PERCENTAGE.** The equity percentage and the guaranteed employment are based on the following sales goals and performance:

| Period | Sales Goals | Equity % |
|---|---|---|
| 08/01/10 thru 12/31/10 | $ 450,000 per month | 0 % |
| 01/01/2011 thru 12/31/11 | $ 6,600,000 per year | 5 % Accumulated |
| 01/01/2012 thru 12/31/12 | $ 7,800,000 per year | 10 % Accumulated |
| 01/01/2013 thru 12/31/13 | $ 9,000,000 per year | 15 % Accumulated |
| 01/01/2014 thru 12/31/14 | $10,500,000 per year | 20 % Accumulated |

o Excluding Existing Accounts